and we'll hear argument next in United States v. McCray, 20-2545. Mr. Milton. Good morning, your honors. May it please the court. Your honors, I'd like to address the first issue of my brief. This is regarding the analog of fentanyl issue, the B1B argument. My second argument with regards to the 5k 2.1 enhancement, I'll rely on my brief if that's okay with the court and I'll just dive into point one. We shall proceed. Thank you, your honor. The controlled substance analog definition under 802 sub 32 of the controlled substances act does apply to 841 B1B. We say this based on the plain text of the statutory scheme as well as a number of canons of construction. Alternatively, if the court does disagree with us on that, we do believe that my client did not receive fair warning of the conduct that was prohibited under count two. My client was charged under count two with 841 A1 and B1B with possession with intent to distribute butyrol fentanyl as an analog of fentanyl. Under that same subchapter, under 802 sub 32, we have the definition of controlled substance analog and we start with subsection one, we go directly to subsection C and we learn that it does not include controlled substances. Judge Villardo and district court, because there was not a word analog, went to the dictionary and in doing so, he wiped out two clauses of the statutory definition, both 32A, the introductory sentence, as well as 32CI. So counsel, can we just go right to the textual analysis because I think that's where we are, right? If you look at the definitional section 802 32, inside the quotation marks are three words, controlled substance analog, right? Yes, your honor. That suggests that when you use those three words together, it is a term of art that has a particularized meaning, right? It could mean that those three words do not appear together in 841B1B. So I understand that it's a similar word and maybe a similar concept, but why is it that we would use the words controlled substance analog, which are in quotation marks, meaning take them literally and transport their meaning verbatim to a different term that does not appear within those quotation marks? Well, I think it might be unreasonable to expect that Congress is going to have both a controlled substance analog definition as well as a separate analog definition. I think that's too much to put on Congress. I think that when you have a definition that appears to only apply to one particular concept, why would we require Congress to go even further with this? I mean, I guess the thing Congress could have easily done if you wanted your meeting is instead of using the term analog standing alone in 841B, it could have said any controlled substance analog, but it chose to deviate from that language and just say analog, right? So it wouldn't have had to define analog separately. It could have just used the defined term controlled substance analog, but it chose not to. That's true, your honor. But I think the result of going outside the statute itself and going to a dictionary really wipes out two clauses here that it just appears on its face to be unnecessary. If we're going to consider the rule of lenity, if we're going to consider the canon of construction where we're going to give every word and clause in a statute its effect, it doesn't seem to be... What is being wiped out? Because the term controlled substance analog is used, right, in the Controlled Substance Act. It's just not used here. So that clause is still in the meeting. No, I meant in the definition section. In other words, you'd have to accept that it applies here. The definition section has two clauses that... I guess you're just begging the question. You're saying that you're wiping out part of the statute by not applying it somewhere. And I think the point is we're not wiping out the section. We're saying it just doesn't apply here to begin with. So your premise, if you take away your premise, then nothing's being ignored. And as Judge Kovner pointed out, I think it's in section 813 where controlled analog or controlled substance analog, that term, is fully used. Congress applied it. So it's not as though they defined a term that then is not picked up anywhere else in the code. It's picked up in 813. So I guess that's why I don't see when Congress makes a specific choice to put those three words in quotation marks and say, we're giving this term a specific meaning. Shouldn't we assume, contrary to your position, that when they specifically choose to use a different phrasing, they don't mean to apply something that's phrased differently? The problem, though, with that is that an individual such as my client who... I mean, I think the way Judge Vellato described the argument only an attorney could love, and he was saying it tongue-in-cheek, of course, but my client, of course, has an 11th grade education, has to be written in a way that an individual can look at this and know what the prohibited conduct is. Well, but again, if you take that, if you're going to assume that someone's reading this, if you're going to assume that it's an 11th grade education, I assume you're assuming that they're not going to be digging deep. Presumably they'd read B1B and see that it's a crime there to sell fentanyl or fentanyl analog. And if you're going to presume then that, well, maybe they're smarter and they're going to read the whole code, well, maybe they're going to realize that 80232 puts controlled substance analog in quotes, and they're going to analyze it that we do. So I don't understand the notice argument that someone's going to be tricked into misreading a statute that maybe will conclude clearly points the other way. Judge, if it's all right with the court, just because my time is limited, may I address what I think might be another difficult aspect of this? I just don't want to run out of time. I don't mean to be evasive in your question. I want to address, Judge Rilardo spent a great deal of time on the unfairness conclusion, and he's a thoughtful judge, but I just want to address these two pages of the record, pages 168 and 169. Judge Rilardo is analyzing why the analog of fentanyl would trigger the mandatory minimum. And one explanation, and that's his words, is that it could be the potency of the analogs. And then he goes into on page 169, these two hypotheticals, and he comes to this conclusion because you have a non-controlled substance analog triggering the mandatory minimum. And then the other part of the hypothetical is the his conclusion is that that's unreasonable, that's even a perverse result. And I like the court to consider page 153 of the record. It's true what Judge Rilardo was saying, that it is one explanation, but 153 of the record, we have the government giving the other potential explanation, and that is that it's difficult to detect the analogs, analog of fentanyl. And the reason is, is because it's mixed in with other substances often. In other words, the government recognizes at 153 that a lot of these analogs are not nearly as potent as fentanyl itself. And if potency was the only reason to trigger the mandatory minimum, the statute wouldn't make much sense. There's a non-controlled substance related reason to trigger the mandatory minimum, and that is the difficulty in detecting these substances. Honestly, counsel, doesn't this all go to what would be a sensible statute to write? Because I'm assuming that as people understand more about synthetic drugs, one might very well reach your conclusion that would be more in your favor or more in the government's favor, or I don't know. I mean, there might be 10 different ways you could write a statute who ought to be more or less punished. But that's not really our job, right? It's just to read the statute and figure out what the words mean. Completely agree, your honor. And I completely agree with that assessment. And it's not, this court doesn't have the license to second guess the mandate of Congress. And I recognize you're saying that. May I just make a quick comment about the legislative history? I realize I'm just over my time. It seems to, thank you, Judge. I think the legislative history here, as we argue in our brief, it seems to suffer from the same problems that Justice Scalia and other judges have noted. Number one, it's not the rule of Congress. Number two, it's inconclusive, as we argue in our brief. And number three, it is intellectually dishonest, if you will, because it is like going to a cocktail party, looking out over the crowd and picking out your friends. The government picks out on page 17, a phrase that which I would dispute is so clear. But of course, when you look at page 18, it seems to muddy the waters on their point. We don't believe the judge should have gone to legislative history at all. But if you do find that that's pertinent, we ask that you reject the government's view on it. Two minutes. We'll hear from the government. Thank you. May it please the court. Monica Richards on behalf of the United States. With regard to this court's determination of a final issue here, it is subject to de novo review. So I heard in that discussion, some points made with regard to the decision that was issued here. And this court can come up, frankly, with its own determination, so long as it's supported by the record, since we have a question of law. And we're looking at a standard of de novo review. That said, the problem that I think as Judge Nardini pointed out, was that the key flaw here is the assertion that the statutory definition of controlled substance analog also applies to the word, single word analog. Analog itself has a definition. Nothing else was needed. And that's science. That's not law. That's not statutes. To interpret analog to share a definition with unreasonable result. Here, it would be an odd result, in fact, if it hadn't been a scheduled substance. If I were to take my opponent's argument, if it were not a schedule one substance, he would still be subjected to the higher penalties, the stricter penalty scheme, because of the definition provision at 813. So anything that would be treated as a provisions as if it was the substance itself. So scheduling a substance simply recognizes the potential for substance abuse. And it defies Congress's intent to protect the public. I'm sorry, it defines Congress's intent to protect the public by enhancing penalties for possessing and distributing such substance, which gets me to the point that of notice, and that was discussed during my opponent's argument. Any individual possessing or fentanyl would understand that he's subjected to the enhanced penalties. Here, in fact, we had somebody who was on notice that what he was distributing was fentanyl. He'd been told that what he was distributing, when ingested, resulted in positive testing for fentanyl, no matter whether they thought it was heroin or some other substance. Which I would like to address briefly, then the additional point that was not addressed by my determination here, and determined that for relevant conduct purposes that the death resulted provision applied. The district court judge did not impose the top sentence, the maximum statutory sentence. He imposed a sentence that he believed was fair based on his finding by a preponderancy evidence that a death had resulted during this common course or scheme. That result here is one which this court should affirm. Unless the court has any questions, I'll rest on my brief. Mr. Murphy. Thank you. Since that was raised again with the unreasonable point, I just want to make, I guess, put this angle out to the court. I recognize Judge Nardini's comments, but just since it was raised again, Judge Villardo on 169 seems to come up with the premise that if one choice by Congress is reasonable, in other words, controlled substance, let's say controlled substance triggers the mandatory minimum, which is different from what the statute says. If one hypothetical is reasonable, the other must be unreasonable. We ask you to reject that and Congress can come up with different ways to go about it. I mean, if it was so easy to fix with just the words of a statute, this problem wouldn't be what it is today. With regards to the notice, I still maintain, I recognize the initial problem that the court has. I still maintain, though, that an individual reading this statute would expect the definition here to apply. I recognize the term of art argument. We just think that that's adding a burden onto Congress that is not reasonable under the circumstances. I'll still rely on my brief regarding point two, unless the court has questions on that. Thank you very much. We'll reserve the decision.